**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**JAZMIN S., O/B/O A.J.H.,**

**Plaintiff,** **25-CV-6275Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff applied for supplemental security income ("SSI"), with the Social Security Administration ("SSA"), on June 17, 2022, alleging disability on behalf of her child, age 10, due to attention deficit hyperactivity disorder ("ADHD"). Dkt. #5, p.56.

On April 11, 2024, plaintiff appeared with counsel and testified at an administrative hearing conducted by telephone before Administrative Law Judge ("ALJ"), Jason Mastrangelo. Dkt. #5 pp.35-53. Plaintiff testified that she resided with her

son, age 12, and two additional children. Dkt. #5, pp.41-42. Plaintiff testified that the child antagonizes his little brother for no reason. Dkt. #5, p.46. She has to watch him constantly because he will hit his brother or grab something out of his hand out of nowhere. Dkt. #5, p.46. She described the child as having been “very impulsive since he was younger.” Dkt. #5, p.46. On a bad day, plaintiff testified that he wouldn’t want to wake up, would yell at her that he hates school and would throw things. Dkt. #5, p.47. It is hard to get him to do things at home; he refuses and wants to question everything. Dkt. #5, p.48.

The child was in a mixed 7th grade classroom with a regular and special education teacher. Dkt. #5, p.42. He takes medication, but misses doses “once a week, maybe twice a week.” Dkt. #5, p.48. The teacher can tell when he misses medication. Dkt. #5, p.48. He takes the bus to school and has been suspended from the bus twice. Dkt. #5, p.43. Plaintiff’s mother is working when the child gets home from school, so the child’s homework is done in school. Dkt. #5, pp.43-44. He does not like school, but loves playing baseball. Dkt. #5, p.44. He has a couple of friends, but has had issues with them at school. Dkt. #5, p.45.

The ALJ rendered a decision that plaintiff was not disabled on May 20, 2024. Dkt. #5, pp.20-31. The Appeals Council denied review on April 9, 2025. Dkt. #5, p.4. Plaintiff commenced this action seeking review of the Commissioner’s final decision on May 28, 2025. Dkt. #1.

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). So long as "substantial evidence supports the ALJ's decision, a court will not remand simply because the evidence also supports an alternate conclusion." *Keough o/b/o Jamt v. Comm'r of Soc. Sec.*, 18-CV-1065, 2020 WL 4504988, at *3 (W.D.N.Y. Aug. 5, 2020), *quoting Cartagena v. Comm'r of Soc. Sec.*, 18-CV-245, 2019 WL 4750425, at *4 (W.D.N.Y. Sept. 27, 2019).

An individual under the age of 18 will be considered disabled under the Social Security Act ("Act"), if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations and can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner must follow a three-step sequential evaluation to determine whether a child is disabled within the meaning of the Act. 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaging in substantial gainful activity. 20 C.F.R. § 416.924(a) & (b). If not, the ALJ proceeds to step two and determines whether the

child has an impairment or combination of impairments that is severe, *i.e.*, causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). If the ALJ finds a severe impairment or combination of impairments, the ALJ proceeds to step three and examines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the criteria of a listed impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 416.924(d).

In the instant case, the ALJ made the following findings with regard to the three-step sequential evaluation: (1) the child had not engaged in substantial gainful activity since the application date of June 17, 2022; (2) the child's ADHD and learning disorder constitute severe impairments; and (3) the child's impairments did not meet or medically or functionally equal any listed impairment, and the child was not, therefore, disabled within the meaning of the SSA. Dkt. #5, pp.21-31.

The ALJ considered whether the child met Listing 12.11, which addresses neurodevelopmental disorders and provides that a child will be disabled if the child exhibits: (A)(1) frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks or hyperactive and impulsive behavior; (2) significant difficulties learning and using academic skills; or (3) recurrent motor movement or vocalization; *and* (B) the child demonstrates an extreme limitation of one, or a marked limitation of two of the following areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist or maintain pace; or (4) adapt or manage oneself. A child has a marked limitation in a domain if their

impairment interferes seriously with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.925(b)(2)(ii) & 20 C.F.R. § 416.926a(e)(2)(i). An extreme limitation exists when the impairment interferes very seriously with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.925(b)(2)(ii) & 20 C.F.R. § 416.926a(e)(3)(i). The ALJ determined that the child did not meet or medically equal Listing 12.11 because although he had a marked limitation in his ability to adapt and manage himself, he had no more than a moderate limitation in the other three areas of mental functioning. Dkt. #5, pp.21-22.

The ALJ then determined that the child did not demonstrate functional equivalence. To evaluate functional equivalence, the ALJ considers how the child functions in the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for self; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairments must cause marked limitations in two domains or an extreme limitation in one domain. 20 C.F.R. § 416.926a(a). The ALJ determined that the child exhibited: (1) less than a marked limitation in acquiring and using information; (2) a marked limitation in attending and completing tasks; (3) less than a marked limitation interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) less than a marked limitation in ability to care for self; and (6) no limitation in health and physical well-being. Dkt. #5, p.23.

Plaintiff argues that the ALJ's assessment of the child's ability to care for self is not supported by substantial evidence. Dkt. #6-1, pp.10-14. More specifically, plaintiff argues that the evidence supporting the ALJ's determination that the child suffered a marked limitation in the area of adapting and managing oneself for purposes of medical equivalence is evidence that supports a determination that the child suffered a marked limitation in the domain of ability to care for himself for purposes of functional equivalence. Dkt. #6-1, pp.13-14. Plaintiff also argues that the ALJ failed to properly consider the child's need for a highly structured environment even after his improvement with medication. Dkt. #6-1, pp.10-13 & 15-17.

The Commissioner argues that the ALJ's determination that the child had less than marked limitations in all functional domains except for the domain of attending and completing tasks is supported by substantial evidence. Dkt. #8-1, pp.6-13. More specifically, the Commissioner asserts that no medical source opined that the child was markedly limited in the domain of caring for self and that the teacher assessments did not support a marked limitation in this domain. Dkt. #8-1, pp.7-10. Even assuming that some of the evidence cited by plaintiff should have been considered under the domain of caring for self, the Commissioner argues that it is not sufficient to establish a marked limitation. Dkt. #8-1, p.10. The Commissioner also argues that the ALJ properly considered the support the child received through his IEP, as well as his functioning outside of school in determining that the child's limitations were less than marked. Dkt. #8-1, pp.11-12.

With respect to medical equivalency, the regulations provide that the area of mental functioning pertaining to adapting or managing oneself

> refers to the abilities to regulate emotions, control behavior, and maintain well-being in age appropriate activities and settings. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable performance in community- or school-related activities; setting goals; making plans independently of others; maintaining personal hygiene; and protecting yourself from harm and exploitation by others.

20 C.F.R. Ch. III Pt. 404, Subpt. P, App.1 Listing 112.00E(4). In determining that the child demonstrated a marked limitation in this area, the ALJ found that even with medication, the child experiences challenges staying focused and was reported as inattentive and at high risk for elopement through January 2024. Dkt. #5, p.22. The ALJ also noted that in April 2024, the child was reported to have obvious problems carrying out multi-step instructions. Dkt. #5, p.22. The ALJ found that such evidence demonstrated that the child continued to have difficulties with distractibility and completing class work even after a change in medication dosage. Dkt. #5, p.22.

With respect to functional equivalency, the regulations provide that the caring for oneself functional domain considers how well a child maintains a healthy physical and emotional state, including how well the child satisfies his physical and emotional needs in an appropriate manner; how the child copes with stress and changes in his environment, and how the child takes care of his own health, possessions and living area. 20 C.F.R. § 416.926a(k). More specifically, caring for onself effectively depends on the child's ability to respond to changes in emotions of the

daily demands of one's environment to help oneself and cooperate with others in taking care of personal needs, health and safety. 20 C.F.R. § 416.926a(k)(1)(i). The domain focuses on how well a child relates to himself "by maintaining a healthy emotional and physical state in ways that are age-appropriate and in comparison to other same-age children who do not have impairments." *Idabel L.B. o/b/o S.B.L. v. Comm'r of Soc. Sec*., 23-CV-6445, 2025 WL 879976, at *4 (W.D.N.Y. March 21, 2025), *quoting Maria E. o/b/o J.M.A. v. Comm'r of Soc. Sec*., 20-CV-1337, 2021 WL 3861422, at *3 (W.D.N.Y. Aug. 30, 2021).

In determining that the child demonstrated a less than marked limitation in this area, the ALJ recognized that, at home, the child was able to get himself a snack, get dressed, brush his teeth, take a shower, and wash his hair. Dkt. #5, p.30. The ALJ also recognized that the child could get himself ready for school, use the microwave and assist his mother with household chores. Dkt. #5, p.30. In addition, the ALJ recognized that a teacher questionnaire completed January 11, 2023 reported a very serious problem with the child's lack of patience and ability to handle frustration and indicated that he needs reminders to follow directions. Dkt. #5, pp.30 & 741. However, the ALJ determined that overall, the child's record demonstrates "improvement over time, as more recent teacher questionnaires reflect a healthy, 'typical teenager' involved in sports and after-school activities." Dkt. #5, p.30.

To the extent that the ALJ relied upon the child's ability to perform self-care tasks, the ALJ misapplied the criteria for the domain of caring for oneself. *See*

*Maria E.,* 2021 WL 3861422, at *3 ("the domain of caring for yourself does not address a [child's] ability to perform self-care tasks."). However, the remainder of the ALJ's assessment of the child's functioning in this domain is supported by substantial evidence. While initial behavioral health records indicate a "history of difficulty managing . . . anger and impulsivity both at school and in the home," (Dkt. #5, p.340), the child's father had recently succumbed to brain cancer (Dkt. #5, pp.272 & 694), and the teacher questionnaire completed January 11, 2023 noted a "huge concern" that medication was administered inconsistently at home, which "greatly affected" the child's day. Dkt. #5, p.741. With his medication, the teacher noted that the child "has self control." Dkt. #5, p.742.

Subsequently, consulting examiner Adam Brownfeld, Ph.D., determined that the child had no evidence of limitation in "adequately maintaining appropriate social behavior; asking questions and requesting assistance in an age-appropriate manner; being aware of danger and taking needed precautions; and interacting adequately with peers and adults." Dkt. #5, p.704. Furthermore, the child's mother reported to Dr. Brownfield that the child's grades were "improving due to improved behaviors." Dkt. #5, p.702. Thereafter, medical records report that the child had "easily transitioned to middle school" and was "not getting into trouble." Dkt. #5, p.783. The child reported friends at school who help him when he needs help and he and his mother reported no significant behaviors at home or at school. Dkt. #5, p.760. Although noted under the domain for acquiring and using information, the teacher questionnaire completed April 9, 2024 also notes that the child "is not a behavior problem," and is a "nice

student/respectful." Dkt. #5, p.166. That teacher questionnaire also indicates nothing more than a slight problem, on a monthly basis, with handling frustration appropriately and being patient when necessary. Dkt. #5, p.170.

While there may be some overlap between the subject matter of the six domains covering functional equivalence and the B criteria for the medical listing, assessing whether the child's impairments functionally equal the listing is not the same as assessing whether the child's impairment meets the listing criteria. *See Victoria B. o/b/o A.C.B. v. Comm'r of Soc. Sec.*, 20-CV-1764, 2023 WL 110111, at *5 (W.D.N.Y. Jan. 5, 2023); *Gonzalez o/b/o J.A.M. v. Saul*, 2019 WL 3891021, at *5 (W.D.N.Y. Aug. 19, 2019); *See also Huffman v. Astrue*, 290 Fed. App'x 87, 89 (10th Cir. July 11, 2008) (noting that functional domains "are specifically designed for determining functional equivalence and are completely delinked from the . . . listings."). More specifically, "courts have found that the analysis under Listing 112.11 for ADHD and the analysis of functional equivalence "are not sufficiently identical." *Carson v. Colvin*, 12-CV-6553, 2014 WL 1746056, at *9 (W.D.N.Y. May 1, 2014) (collecting cases). Thus, the ALJ's determination of a marked limitation in the adapt and manage area of mental functioning under the B criteria for Listing 112.11 for ADHD does not automatically transfer to any particular domain under the functional equivalence analysis. As applied in this case, the evidence supporting the ALJ's finding of a marked limitation in ability to adapt and manage oneself, *to wit*, the child's issues with focus and remaining on task, was also relied upon to fund a marked limitation in the domain of attending and completing tasks.

SSA regulations also require the ALJ to consider the effects of a structured or supportive setting on the child's functioning and to assess the degree of limitation in functioning the child has or would have without such a setting. 20 C.F.R. § 416.924a(b)(5)(iv)(c). In this case, the ALJ recognized that the child was in a mixed classroom setting with both a special education teacher and regular education teacher and "was reported to require a substantial amount of support throughout the school day." Dkt. #5, pp.24-25. Furthermore, the ALJ noted that the child's individual education plan ("IEP"), recommended small group instruction, with seating close to the teacher, as well as repetition of material, clear and concise expectations, opportunities for movement, flexible seating, visual support and refocusing prompts. Dkt. #5, pp.26 & 29. However, the ALJ also recognized that outside of the classroom, the child was participating in after school sports and reported to assist with chores at home. Dkt. #5, p.22. Moreover, the ALJ noted that the child "presented as cooperative, friendly, and relaxed" during his consultative examination, where he was able to follow age-appropriate directions, recall and understand instructions, and complete age-appropriate tasks. Dkt. #5, p.25. Thus, contrary to plaintiff's argument, the ALJ did consider the child's ability to function outside of the structured and supportive setting of school.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #6), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #8), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED: Buffalo, New York**
**September 25, 2026**

**s/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**